Name _____
Address _____
City, State, Zip _____
Phone _____
Fax _____
E-Mail _____

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☐ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CASE NUMBER:

_____

PLAINTIFF(S),

v.

_____

DEFENDANT(S).

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that _____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☐ Order (specify):

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on _____.   Entered on the docket in this action on _____.

A copy of said judgment or order is attached hereto.

_____          *Aleksandr Gruzman*
Date                                                    Signature
                                                        ☐ Appellant/ProSe   ☐ Counsel for Appellant   ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

A-2 (01/07)                                **NOTICE OF APPEAL**

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 22-1759-MWF (RAO) | Date: | March 15, 2023 |
| Title: | Erin Hughes v. First National Insurance Company of America | | |

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                               Court Reporter:
Rita Sanchez                                Not Reported

Attorneys Present for Plaintiff:            Attorneys Present for Defendant:
None Present                                None Present

**Proceedings (In Chambers):** ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]; ENTRY OF JUDGMENT

Before the Court is Defendant First National Insurance Company of America's ("FNICA") Motion for Summary Judgment (the "Motion"), filed on January 13, 2023. (Docket No. 29). Plaintiff Erin Hughes filed an Opposition on January 30, 2023. (Docket No. 32). Defendant filed a Reply on February 6, 2023. (Docket No. 34).

The Court has read and considered the papers filed in connection with the Motion and held a hearing on **March 13, 2023**.

Defendant's Motion for Summary Judgment is **GRANTED**. The uncontroverted facts demonstrate that Plaintiff made material misrepresentations on her insurance application with respect to the use of her property for business purposes and her prior losses. Defendant is therefore entitled to summary judgment on its counterclaim of rescission of the insurance policy, which negates Plaintiff's affirmative claims.

**I.    BACKGROUND**

Based on the evidence submitted in connection with the Motion, the following facts are undisputed:

On December 16, 2020, FNICA received, through Hughes' insurance agent at YS Insurance, an application for limited property insurance for her property located at

---

**CIVIL MINUTES—GENERAL**                                                              1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 22-1759-MWF (RAO)                    **Date:**  March 15, 2023
**Title:**     Erin Hughes v. First National Insurance Company of America

2145 Rambla Pacifico in Malibu, California (the "Property").  (Defendant Statement of Uncontroverted Fact ("SUF") (Docket No. 29-5) ¶ 10).  FNICA received the application through its online rating platform, which generates the policy quote and application once the insurance agent completes the application questionnaire with the insured.  (SUF ¶¶ 3–5, 10).  FNICA's guidelines on its online rating platform will automatically deny or terminate applications where applicants disclose any short-term rental business on the premises or more than one prior loss in the last five years.  (*Id.* ¶¶ 4–5).

In her application, Hughes described the Property as a "single family dwelling" with only one family.  (*Id.* ¶11).  Under "Loss Information," Hughes represented that she had no losses in the last five years.  (*Id.*).  Hughes also represented that there was "no" "business on the premises."  (*Id.*).  Hughes provided this information in a phone interview by YS Insurance as part of the application process.  (*Id.* ¶ 12).  She did not correct any of those representations when she reviewed and electronically signed the application.  (*Id.*).

Based on Hughes' completed application, the agent bound coverage for the Property under Limited Property Policy No. OA4817082, effective December 16, 2020, through December 16, 2021 (the "Limited Property Policy").  (*Id.* ¶ 13).  The Limited Property Policy stated that it did not cover loss caused by fire.  (*Id.* ¶ 14).  For content losses that were caused by a covered peril, the available coverage limit depended on whether the content were located at the residence.  (*Id.* ¶ 16).  The Limited Property Policy set forth "An Insured's Duties After Loss," which required Hughes to (1) "cooperate with us in the investigation . . . of any claim"; (2) "prepare an inventory of the loss to . . . personal property showing in detail the quantity, description, replacement cost and age," and "[a]ttach all bills, receipts and related documents that justify the figures in the inventory"; and (3) "as often as we reasonably require," provide records and documents and "submit to examinations under oath and subscribe the same."  (*Id.* ¶ 17).

In the early morning hours of January 17, 2021, a fire damaged the Property.  (*Id.* ¶¶ 21).  At the time of the fire, Hughes had rented the Property to a third-party who

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 22-1759-MWF (RAO) | Date:  March 15, 2023 |
| Title:    Erin Hughes v. First National Insurance Company of America | |

had booked the property through TripAdvisor.  (*Id.* ¶¶ 21–25).  FNICA denied Hughes' fire loss claim, because the Limited Property Policy did not cover losses caused by fire.  (*Id.* ¶ 29–30).

Separately, on January 30, 2021, Hughes submitted a claim to FNICA under the Limited Property Policy for the alleged theft of contents from the Property.  (*Id.* ¶ 26).  According to Plaintiff, shortly after the fire, she discovered nearly $1 million in missing contents from the grounds of the Property.  (*Id.* ¶¶ 26, 33).

At the outset of the claim investigation, FNICA discovered evidence that the Property had been operated as a short-term rental.  (*Id.* ¶¶ 36–39).  Various online rental platforms listed the Property for rent.  (*Id.*).  The claim investigation also revealed that, at the time of the Fire, Hughes had rented the Property to a family for a memorial service through TripAdvisor.  (*Id.* ¶¶ 22–25).  Hughes also produced documents reflecting reservation statements and confirmations for short-term tenants from three different websites: (1) Booking.com; (2) Tripadvisor.com; and (3) VRBO.  (*Id.* ¶¶ 36–38).  Those statements and other subsequently discovered documents demonstrate that the Property generated in excess of $100,000 in rental income in 2020 alone.  (*Id.* ¶¶ 88–90).

The claims investigation also uncovered three prior claims by Hughes, which were omitted in her application.  (*Id.* ¶ 40).  Hughes made separate fire and theft claims to her prior homeowners insurer, Lexington Insurance, arising out of the Woolsey wildfire in November 2018.  (*Id.*).  In February 2019, Hughes also made a claim to Lexington for wind damage to the Property.  Had FNICA known any of the facts related to the use of the Property as a short-term rental or Hughes' prior loss, it would not have bound coverage under the Limited Property Policy.  (*Id.* ¶¶ 42–44).

FNICA's investigation raised several coverage concerns, including as to (1) Hughes' use of the Property; (2) the scope and amount of Hughes' alleged losses; and (3) Hughes' separate claim to Farmers for the same or similar losses.  (*Id.* ¶¶ 33–34, 51).  In a letter dated February 3, 2021, FNICA therefore provided Hughes with a blank Proof of Loss and Property Loss Sheet, and asked that she complete and return it.  (*Id.* ¶ 35).  Then, in a letter dated February 23, 2021, FNICA advised that "we are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 22-1759-MWF (RAO) | Date:  March 15, 2023 |
| Title:    Erin Hughes v. First National Insurance Company of America | |

investigating your loss under a Reservation of Rights" and that "[n]o coverage determination can be provided until our investigation has been completed." FINCA asked Hughes to submit to an examination under oath ("EUO") and to provide a "list of all stolen items" and "proof of ownership for the stolen items." (*Id.* ¶ 52).

FNICA retained coverage counsel, Michele Levinson of the Colman Perkins law firm, to assist in the investigation by seeking Hughes' production of records and completing her EUO. (*Id.* ¶ 53). In letters to Hughes dated March 16 and April 6, 2021, Levinson noticed the EUO for April 15, 2021. (*Id.* ¶ 54–58). The letters also requested that Hughes provide various categories of documents prior to the EUO, including: (1) fire/police reports; (2) communications with Farmers, the CFP, and Hughes' insurance agents relating to fire, theft and policies; (3) documents relating to the use of the Property as a rental; (4) documents sufficient to establish Hughes' residence; (5) an inventory of all items stolen; and (6) documents reflecting Hughes' income. (*Id.*).

FNICA required those documents to investigate the scope and amount of Hughes' theft claim, including the submission to or payment by Farmers of any duplicate items; Plaintiff's residency, which could impact the limits of coverage; the use of the Property relevant to representations by Hughes in her policy application; Hughes' purchase and ownership of the contents; and any financial motivation applicable to Hughes' valuation of her alleged losses. (*Id.* ¶ 56).

Hughes did not appear for the EUO. Instead, she advised that she had retained counsel, Aleksandr Gruzman. (*Id.* ¶¶ 59–60).

Levinson then wrote to Gruzman re-scheduling Plaintiff's EUO for May 14, 2021, and asked that Hughes produce the requested documents prior to the EUO. (*Id.* ¶¶ 61–63). In response, Hughes produced "the items list, police reports and cause and origin report," but argued that "[t]he remainder of the documents you requested either does [sic] not exist, or an [sic] invasion of privacy of Ms. Hughes." (*Id.* ¶¶ 64, 67). Hughes' production did not include nearly all of the other requested documents. (*Id.* ¶ 65). Gruzman suggested that the remainder of the documents either

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-1759-MWF (RAO)            **Date:** March 15, 2023
**Title:**     Erin Hughes v. First National Insurance Company of America

did not exist or were an invasion of Hughes' privacy. (Plaintiff's Separate Statement of Uncontroverted Fact ("PSUF") (Docket No. 32-2) ¶ 65).

Levinson explained the need for all of the documents. Pending receipt of those records, she postponed the EUO. (SUF ¶¶ 66, 68).

Hughes thereafter provided a Proof of Loss dated May 13, 2021. (*Id.* ¶ 69). In it, Hughes claimed a contents loss totaling $1.75 million, but only provided an illegible Property Loss Sheet with a contents loss that appeared to total less than the amount claimed. The Property Loss Sheet did not individually identify each item, but instead grouped together items like "designer" clothing for $250,000 and disposable gowns for $270,000. (*Id.*). It also omitted key information, like brand name, description, place of purchase, and original cost. (*Id.* ¶ 70).

The parties rescheduled the EUO for July 22, 2021. Levinson explained that Hughes had not produced documents to many of the requested categories including, without limitation, a detailed inventory of the claimed items. She asked Hughes to do so by July 6, in advance of the EUO. (*Id.* ¶¶ 71–72).

In emails dated July 5 and 6, 2021, Gruzman produced some additional records, including various handwritten invoices and another Property Loss Sheet for, among other things, Hughes' alleged purchase of "500 Sports Suits" totaling $500,000, "45,000 Gowns" totaling $225,000, and a body treatment machine totaling $60,000. (*Id.* ¶¶ 73, 75). In this Property Loss Sheet, Hughes claimed that her theft claim totaled $841,000. (*Id.* ¶ 75).

Levinson responded that the production remained inadequate, because Hughes had still had not produced a signed Proof of Loss with a detailed inventory, any of her claim communications with CFP or Farmers, prior claim records, including for the 2018 theft claim, and financial records demonstrating proof of payment for the allegedly stolen items. (*Id.* ¶¶ 74, 76, 78).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-1759-MWF (RAO)**                              **Date:  March 15, 2023**
**Title:**     Erin Hughes v. First National Insurance Company of America

As a result, Levinson rescheduled Hughes' EUO for August 6, 2021, and advised that FNICA "will certainly need a second session because so many of the requested items are missing and [Hughes] has yet to provide a detailed inventory or identify which receipts correspond with each item."  (*Id.* ¶¶ 76, 79–81).

On August 6, 2021, Hughes appeared virtually for the first session of her EUO.  (*Id.* ¶ 82).  During the EUO, Hughes obstructed the examination by (1) refusing to respond to questions in a straightforward manner, or at all, based on unjustified relevancy objections, (2) offering argumentative responses, and (3) disconnecting from the examination for lengthy periods of time.  (*Id.* ¶¶ 83–86).  By the time of the EUO, Hughes had not produced the remaining categories of documents requested by Levinson.  (*Id.* ¶¶ 83, 91-92, 94).  Despite requests by Levinson, Hughes also failed to return her signed EUO transcript. (*Id.* ¶¶ 91, 98, 106).

After the August 6 EUO, Hughes produced some additional (but incomplete) records.  She produced incomplete rental booking records for the Property. (*Id.* ¶¶ 87–89).  And she provided a new Proof of Loss signed and dated September 3, 2021.  (*Id.* ¶ 95).  The new Proof of Loss now claimed a theft loss totaling $912,241.66.  In an attached Property Loss Sheet, Hughes itemized the same alleged theft of Sports Suits ($500,000), disposable gowns ($225,000), a body treatment machine ($60,000) and other items. (*Id.*).  But this time, the Proof of Loss identified clothing losses totaling $87,135 and the theft of a baby grand piano totaling $19,106.66.  For the first time, it also disclosed that the 45,000 disposable gowns were "donated by DTD," and it described the locations where the listed items had been stored outside of the burned house. (*Id.*).

FNICA scheduled a second session of Hughes' EUO, but she and Gruzman initially refused to appear. (*Id.* ¶¶ 96–97).  Ultimately, Hughes appeared for another session on November 16, 2021.  (*Id.* ¶¶ 99-100).  She again participated virtually, but this time while standing in a public place and could be overheard arguing with someone "off-camera."  Then, Hughes refused to acknowledge that she could proceed with the examination.  Levinson therefore adjourned the EUO.  Only after doing so, did Gruzman disclose that Hughes was standing outside of a hospital

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-1759-MWF (RAO) | **Date:** March 15, 2023 |
| **Title:** Erin Hughes v. First National Insurance Company of America | |

emergency room to seek treatment for "emotional distress" and "posttraumatic stress," which he attributed to FNICA. (*Id.* 100–102).

Levinson subsequently requested another session to complete Hughes' EUO, but she refused. (*Id.* ¶¶ 103–105).

On March 7, 2022, FNICA denied the theft claim based on Hughes' breach of policy conditions; this decision was based on all of her failures to cooperate described above. FNICA also concluded that Hughes misrepresented the use the Property – specifically, disputing that she operated it as a rental, calling into question the accuracy of her entire claim. (*Id.* ¶¶ 107-108.)

On January 12, 2022, Hughes filed her Complaint against FNICA alleging claims for breach of contract and bad faith. On April 6, 2022, FNICA filed its Answer and Counterclaim to Hughes' Complaint. In the Counterclaim, FNICA seeks rescission of the Limited Property Policy based on Hughes' material misrepresentations and omissions in her application.

## II.    LEGAL STANDARD

In deciding a motion for summary judgment under Rule 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-1759-MWF (RAO)                    Date:  March 15, 2023
Title:     Erin Hughes v. First National Insurance Company of America

absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).

"A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'"  *Anderson*, 477 U.S. at 249-50.

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

### III.    EVIDENTIARY OBJECTIONS

The parties advance various objections to the evidence submitted in connection with the Motion.  (*See* Docket Nos. 32-1, 34-2).  Many of the objections are garden variety evidentiary objections based on mischaracterization of evidence, speculation, lack of foundation, hearsay, and relevance.

While these objections may be cognizable at trial, on a motion for summary judgment, the Court is concerned only with the ***admissibility*** of the relevant ***facts*** at trial, and not the ***form*** of these facts as presented in the Motion.  *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) ("[A]t the summary judgment stage,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-1759-MWF (RAO)                               Date:  March 15, 2023
Title:    Erin Hughes v. First National Insurance Company of America

we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents" (citations omitted)). Where "the contents of a document can be presented in a form that would be admissible at trial — for example, through live testimony by the author of the document — the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.* (citations omitted); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (holding that plaintiff's diary could be considered on summary judgment because she could testify consistent with its contents at trial); *Hughes v. United States,* 953 F.2d 531, 543 (9th Cir. 1992) (IRS litigation adviser's affidavit may be considered on summary judgment despite hearsay and best evidence rule objections; facts underlying affidavit were of type admissible as evidence even though affidavit itself may not be).

Accordingly, the objections are **OVERRULED**.

## IV.     DISCUSSION

FNICA moves for summary judgment on its counterclaim for rescission of the Limited Property Policy on the basis that Hughes misrepresented, withheld, and omitted material information from FNICA when she applied for the policy. (Motion at 11). FNICA also moves for summary judgment on Hughes' claims on the ground that she failed to cooperate with FNICA in its investigation of the theft claim, and even obstructed it. (*Id.* at 11–12).

Under California law, "a material misrepresentation or concealment in an insurance application, whether intentional or unintentional, entitles the insurer to rescind the insurance policy *ab initio.*" *West Coast Life Ins. Co. v. Ward*, 132 Cal. App. 4th 181, 186–187, 33 Cal. Rptr. 3d 319 (2005) (citing *O'Riordan v. Fed. Kemper Life Assurance*, 36 Cal. 4th 281, 286–287, 30 Cal. Rptr. 3d 507 (2005)); *see* Cal. Ins. Code § 331 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."); Cal. Ins. Code § 359 (materially false representation may result in rescission of insurance policy). Therefore, "an insurer may, under Insurance Code sections 331 and 359, rescind a fire insurance policy based on an insured's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-1759-MWF (RAO)            **Date:** March 15, 2023
**Title:**    Erin Hughes v. First National Insurance Company of America

negligent or unintentional misrepresentation of a material fact in an insurance application, notwithstanding the willful misrepresentation clause included in the required standard form insurance policy (Ins. Code §§ 2070 and 2071)." *Mitchell v. United Nat'l Ins. Co.*, 127 Cal. App. 4th 457, 463, 25 Cal. Rptr. 3d 627 (2005); *see Star Ins. Co. v. Sunwest Metals, Inc.*, Case No. SACV 13-1390-DOC (DFMx), 2014 WL 7383614 at *9 (C.D. Cal. Dec. 29, 2014) (*Mitchell's* holding provides the correct legal standard in action claiming misrepresentation in fire insurance application).

       The question of materiality is "determined solely by the probable and reasonable effect which truthful answers would have had on the insurer." *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 916, 109 Cal. Rptr. 473 (1973); *see also* Cal. Ins. Code § 334. Generally, information is material if it could reasonably affect the insurer's decision to enter into the contract, estimating the degree or character of the risk, or in fixing the premium rate; it need not relate to the loss ultimately claimed by the insured. *See Mitchell*, 127 Cal. App. 4th at 474. "The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality [of that information] as a matter of law." *West Coast Life Ins. Co.*, 132 Cal. App. 4th at 187 (quoting *Old Line Life. Ins. Co. v. Superior Court*, 229 Cal. App. 3d 1600, 1603–1604, 281 Cal. Rptr. 15 (1991)). Finally, materiality is a subjective inquiry; that is, the critical question is the effect truthful answers would have had on the particular insurer, "not on some 'average reasonable' insurer." *Mitchell*, 127 Cal. App. 4th at 474; *see Western World Ins. Co. v. Prof'l Collection Consultants*, 721 F. App'x 621, 622 (9th Cir. 2018).

       FNICA contends that it (1) would have terminated Hughes' application had she disclosed the Property's use as a short-term rental and (2) would not have bound coverage under the Limited Property Policy if Hughes had disclosed more than one loss in the last five years. (Motion at 24).

       A.     <u>Use as Short-Term Rental</u>

       FNICA argues that the uncontroverted facts show that Hughes operated the Property as a short-term rental. (Motion at 24 (citing SUF ¶¶ 22–25, 36–39, 88–90)).

---

**CIVIL MINUTES—GENERAL**            10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 22-1759-MWF (RAO) | Date:  March 15, 2023 |
| Title:      Erin Hughes v. First National Insurance Company of America | |

      Hughes argues that she answered truthfully when she represented that the Property was a single family dwelling with her family living there, and that there was no business at the Property.  (Opposition at 4).  She argues that rental platform listings cited by FNICA were not done by Hughes and occurred before she purchased the insurance in December 2020.  (*Id.* at 7).  At the hearing, counsel for Hughes similarly argued that the short-term rental of the Property was a disputed issue of fact.

      However, Hughes' prior sworn testimony demonstrates that she operated the home, at least in part, as a short-term rental.  In a sworn EUO taken in a separate claim related to the fire, Hughes acknowledged that she was responsible for listing and advertising the Property for rental.  (Compendium of Exhibits, Exhibits 46 through 80 (Docket No. 29-8), Ex. 51, 59:5–18, 66:19–68:24).  Hughes testified that she rented out the Property via Booking.com, TripAdvisor, HomeAway, and VRBO and that she was in touch with the platforms regarding her creation of the listings.  (*See id.*).  Hughes admitted to submitting descriptions and photos of the Property to be placed on the short-term rental platforms.  (*Id.*).  While Hughes now states in her declaration that she has never run a business at the Property, she cannot create an issue of fact by a declaration contradicting her prior testimony.  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.,* 577 F.3d 989, 998 (9th Cir.2009)) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

      The uncontroverted screen shots procured by FNICA in its investigation of the claim and provided by Hughes display reservation statements and confirmations for short-term tenants at the Property on Booking.com, TripAdvisor, and VRBO that collectively generated in excess of $100,000 and included no less than thirty-one distinct rentals in 2020 alone.  (Compendium of Exhibits, Exhibits 1 through 45 (Docket No. 29-7), Ex. 36 at 480–91, 513; Ex. 44 at 642–44).

      Hughes argues that it was her sister, not she, who rented out the Property throughout 2020 without permission.  (Declaration of Erin Hughes ("Hughes Decl.") (Docket No 32-2) ¶ 14).  Hughes states that she initiated an eviction proceeding against her sister when she learned of her conduct.  This argument, however, does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 22-1759-MWF (RAO)            **Date:  March 15, 2023**
**Title:**  Erin Hughes v. First National Insurance Company of America

overcome the requirement to disclose the short-term rental use of the Property in the part of the application which asked if there was "a business on the premises." (Compendium of Exhibits, Exhibits 1 through 45, Ex. 1). This is especially true considering that Hughes concedes in her declaration that she personally, and not her sister, rented the Property to the short-term tenant who was renting the Property at the time of the fire. (Hughes Decl. ¶ 14).

Hughes argues that her homeowners policy with the General Insurance Company of America permits the rental of the Property on an occasional basis for exclusive use as a residence and activities which are incident to non-business pursuits. (Opposition at 7). However, the existence of this provision in a different policy does not change the uncontroverted fact that FNICA would have rejected Hughes' application if she had disclosed that she was operating her Property as a short-term rental, in whole or in part. Additionally, the Court determines that no reasonable jury could conclude that the property was not used in a business pursuit given the undisputed frequency with which it had been rented immediately prior to Hughes' application for the Limited Property Policy. *See Terrell v. State Farm Gen. Ins. Co.*, 40 Cal. App. 5th 497, 504–06, 253 Cal. Rptr. 3d 226 (2019) (business pursuit includes "a regular activity engaged in for the purpose of earning a profit" and may include "part-time or supplemental incomes" activities).

These uncontroverted facts establish that Hughes misrepresented in her insurance application that the Property was not used as a business.

Hughes does not contest that the misrepresentation is material to the risk that FNICA agreed to insure. Nor could she, as it is uncontroversial that the presence of frequent, unfamiliar tenants increases the potential exposure at the Property and likelihood of a claim. (SUF ¶ 5). Hughes also does not dispute that the use of the Property as a short-term rental would have made the risk ineligible under FNICA's underwriting guidelines. (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-1759-MWF (RAO) | **Date:** March 15, 2023 |
| **Title:** Erin Hughes v. First National Insurance Company of America | |

Accordingly, Hughes' failure to disclose the use of the Property as a short-term rental constitutes a material misrepresentation that supports FNICA's claim for rescission. *See Mitchell*, 127 Cal. App. 4th at 474.

### B. Prior Loss

FNICA also argues that the uncontroverted facts show that Hughes had at least three claims and losses submitted to her prior insurer, Lexington Insurance, in 2018 and 2019, despite her representation that she had no losses. (*See* Motion at 24 (citing SUF ¶ 40)).

Hughes does not dispute the existence of the losses but states that her understanding at the time she was filling out the insurance application over the phone with the YS agent was that the agent wanted to know whether she had any prior losses with Safeco only. (Opposition at 4). Hughes contends that that the YS agent stated that the agency would verify whether Hughes had any prior insurance claims at the Property. (*Id.*). Additionally, Hughes argues that her lawsuit with Lexington is publicly available. (*Id.*).

Hughes does not deny that the application asks about prior losses without a qualification limiting answers to only losses with Safeco. Hughes however does suggest that a language barrier led to her misunderstanding of the question, but Plaintiff does not offer any information to support that she did not understand the broad question about prior losses. FNICA points out that Hughes understands, reads, and writes in English, as evidenced by her prior EUO testimony and current declaration. (Reply at 17). FNICA contends that the applicable question unambiguously asked her to identify the number of losses in the last five years. (*Id.*).

Moreover, Hughes does not provide any authority that her misunderstanding should negate her misrepresentation. Instead, misunderstanding does not appear to be a defense against rescission. *See West Coast Life Ins. Co. v. Ward,* 132 Cal.App.4th 181, 33 Cal.Rptr.3d 319, 323 (2005) ("a material misrepresentation or concealment in an insurance application, whether intentional or unintentional, entitles the insurer to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV 22-1759-MWF (RAO) | Date:  March 15, 2023 |
| Title: | Erin Hughes v. First National Insurance Company of America | |

rescind the insurance policy"); *cf. Hafiz v. Metro. Life Ins. Co.*, 390 F. App'x 671, 672 (9th Cir. 2010) (affirming summary judgment for insurer where plaintiffs provided no authority that misunderstandings based on cultural differences should negate their misrepresentations).

Hughes' additional defense of her omission on the ground that her lawsuit with Lexington was public does not help her.  Insurers do not have a duty to search for an insured's prior claims and may rely on an applicant's answers without verifying their accuracy.  *See Mitchell*, 127 Cal. App. 4th at 476 (underwriter has no obligation to verify the accuracy of the representations made by applicant).

FNICA contends without dispute that Hughes' loss history was highly material to FNICA's decision to issue coverage.  (Motion at 24).  FNICA explains that an accurate loss history is essential to underwriting a particular risk because FNICA needs the information to assess the nature of potential claims that may rise, the circumstances that could give rise to claims, and what FNICA may face with respect to future losses.  (*Id.*).  California courts have recognized that an applicant's loss history can be a fact material to insurance risk.  *See Imperial Cas. & Indem. Co. v. Sogomonian,* 198 Cal. App. 3d 169, 181, 243 Cal. Rptr. 639 (1988) (insureds' failure to disclose that (1) another insurer had refused to renew their previous homeowner's policy; and (2) that insureds suffered damages in landslide with resulting litigation with downhill neighbor were material nondisclosures which entitled insurer to rescind policy).  Hughes does not dispute that her prior loss history was a material fact to insurance risk.  Hughes also does not contest that the disclosure of her three prior losses would have caused FNICA's online rating platform to automatically reject and deny her application.  (SUF ¶¶ 42–44).

Having identified two independent bases to grant summary judgment, the Court need not reach FNICA's additional argument for summary judgment based on Hughes' breach of the policy conditions.  The Court notes that "[a]n insured's compliance with a policy requirement to submit to an examination under oath is a prerequisite to the right to receive benefits under the policy." *Brizuela v. CalFarm Ins. Co.,* 116 Cal. App. 4th 578, 587, 10 Cal. Rptr. 3d 661 (2004).  Here, summary judgment might well have also been appropriate because the undisputed facts suggest Hughes refused to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-1759-MWF (RAO)          **Date:** March 15, 2023
**Title:** Erin Hughes v. First National Insurance Company of America

cooperate in the requested second EUO. (SUF ¶¶ 99–105); *see id.* In addition, Hughes provided a revised proof of loss and new documents substantiating her claim after completion of the first EUO session. (SUF ¶¶ 87–89, 95); *cf. Abdelhamid v. Fire Ins. Exch.,* 182 Cal. App. 4th 990, 1000–02, 106 Cal. Rptr. 3d 26 (2010) (affirming grant of summary judgment of breach of contract and bad faith claims where proof of loss and required supporting documentation were not provided until after EUO and denial of claim); *Sarkisyants v. State Farm Mutual Auto. Ins. Co.,* 256 Fed. Appx. 52, 53 (9th Cir. 2007) (affirming summary judgment where plaintiff did not attend a reasonably requested second EUO despite numerous requests).

At the hearing, counsel for Hughes argued that other evidence gave rise to factual disputes about her cooperation. The Court is dubious, but need not resolve the issue when there are two other bases for judgment as a matter of law. Hughes provided false and material information regarding the use of the Property and her prior loss history on the insurance application.

Accordingly, based on the undisputed facts, FNICA is entitled to a declaratory judgment finding that FNICA is entitled to rescind the insurance policy issued to Erin Hughes based upon Hughes' material misrepresentations. *See Mitchell*, 127 Cal. App. 4th at 463. The Motion is therefore **GRANTED** with respect FNICA's counterclaim for rescission. Once rescinded, the Limited Property Policy is deemed void *ab initio* "as though it never existed." *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal.App.4th 1259, 1267, 67 Cal. Rptr. 3d 917 (2007). The Motion is therefore also **GRANTED** with respect to Hughes' breach of contract and bad faith claims.

All claims thus being resolved, the Court now **GRANTS** summary judgment in favor of FNICA on all claims.

IT IS SO ORDERED.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.

Case 2:22-cv-01759-MWF-RAO   Document 44   Filed 04/12/23   Page 17 of 17   Page ID #:2362

# PROOF OF SERVICE
## (1013a, 2015.5 C.C.P.)

STATE OF CALIBRATION )
) ss.
COUNTY OF LOS ANGELES )

    I reside in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My address is 7703 Santa Monica Blvd., Suite 1, West Hollywood, CA, 90046.

    On April 12, 2023 I served the foregoing document described as **NOTICE OF APPEAL; REPRESENTATION STATEMENT** on the interested parties in this action as follows:

Jeffrey Crowe Esq.
Sheppard Mullin
650 Town Center Drive
Costa Mesa, CA, 92626

**BY EMAIL**: I emailed the documents named herein to counsel for Defendant, at JCrowe@sheppardmullin.com.

    I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct. Executed on April 12, 2023 at Los Angeles County, California.

                                      SIGNED:

                                      *Aleksandr Gruzman*
                                      _____
                                      Alex Gruzman